In the Lighthouse Fellowship case versus the governor of Virginia, Mr. Schmidt. Are you there, sir? Yes, your honor. We'll be pleased to hear from you, sir. Good to have you with us. Thank you, your honor. And good morning to your honors. My name is Daniel Schmidt on behalf of the Appellants Lighthouse Fellowship Church. The district court should be reversed for two reasons. One, the governor is not immune from suit over an executive order that only he has the authority to issue or reissue or amend, in this case, as he did. And two, because even assuming that the order has expired, Lighthouse's complaint is not moved because it is capable of repetition, yet evading review, and it satisfies the exception for voluntary cessation, not rendering the case moved. Your honors, under the Supreme Court's decision in Verizon, Maryland, as to whether a governor is immune from suit from his executive orders, it requires only a straightforward inquiry. One, whether there is an ongoing violation of federal law. Okay, what is the ongoing violation of federal law? Let's start with one. One, your honor, the proper inquiry for determining whether there is an ongoing violation of federal law is to look at whether the complaint alleged an ongoing violation of federal law. Here, at the time the complaint was filed, there was an order that restricted Lighthouse from engaging in the free exercise of its religious worship if it exceeded 10 people, and then the numbers changed. Okay, so what are the ongoing violations of federal law? Now, your honor, well, for one, as I said, under Verizon, Maryland, and under this court's decision in DTM. Okay, but that's not my question. My question is, what are the ongoing violations of federal law? I heard your recitation of the case you want to cite. Well, it's your case, your honor. It's DTM, and it's the Supreme Court's in Verizon, Maryland. Okay, but what is the ongoing violation of federal law? Your honor, under these court's precedence, if you look at the complaint, but even now, the ongoing violation of federal law, under Tandon, under South Bay, under Catholic Diocese, all of them said, if a religious worship service remains under a constant threat, that a restriction can be removed. Okay, so there is no ongoing violation of federal law now. It's the constant threat that you're concerned about. Is that right? Well, that is an ongoing violation, because if you remain under a constant threat, which Tandon and Catholic Diocese and South Bay all said, does not render a case moot, which the mootness analysis mirrors the analysis. Let me direct you to the complaint, because in the complaint, you cite three executive orders, 51, 53, and 55, and you define those as the gathering orders. So it's my understanding that none of those that comprise the gathering orders are now in effect. So this goes back to Judge Thacker's question. If they're not in effect, what's the ongoing violation? Your Honor, the ongoing violation... Because that's all you asked for, was those three orders. That's what you defined the gathering orders to be, and that's what your complaint asked to be enjoined. Respectfully, Your Honor, that's not all we asked for. If you look at the prayer for relief on pages 45 to 46 of the verified complaint, it says not only those specific orders, but any future modification, revision, or subsequently issued new orders. So it was challenging the entire scheme under which the government issued... Well, do we have any modifications or new orders? Your Honor, if you look at page... Not currently in effect, but that's where Tandon and South Bay and Catholic Diocese... Actually, all the modifications to those orders, all orders following the orders you complained about, actually lifted restrictions on religious services. Even new orders that were issued specifically exempted religious services. Subsequently, Your Honor, but it was a progression of... It was 10, and then it was 25, and then 50. They did get... And now it's zero, right? It's zero. There are no gathering restrictions of any sort. The orders have expired. Particularly on religion. That's correct. All of the executive orders in that regard have expired. But if you look at page three of our reply, we cite to... Which is still in effect. I looked at it this morning. It still currently exists on the governor's website right now. That says the governor is keeping all options on the table, that he may impose new restrictions if he deems them necessary, and that he might impose new orders should a variation of COVID-19 reoccur. If you look at the... In that same discussion on page three of the reply, Your Honor, where it talks about how the Delta variant is surging in Virginia, and where we have a new wave of different issues arising from COVID-19. On his own website, which this court can take judicial notice, even to this day, right now, it says that he's keeping all options on the table and may impose new restrictions under Tandon, Catholic Diocese, and South Bay. How does that... How does that potentiality equate to a likelihood of recurrence, which is, I think, what would be required in order for there to be review? Well, Your Honor, if you're going into the mootness analysis, which I think they... The ongoing violation and the mootness analysis mirrored each other. Here, the standard under... And that specifically requires an ongoing violation of federal law. So the two concepts are not the same, which is why we keep asking you about an ongoing violation of federal law. Right, Your Honor. And, Judge Akia, I agree with you that the ex parte Young analysis requires an analysis of whether there is an ongoing violation of federal law. And what I have mentioned to Judge Thacker before is under Verizon Maryland, 535 U.S. at 645, and under this court's decision in DTM, it says the point at which you analyze whether there's an ongoing violation of federal law is at the time the complaint is filed. Here, when the complaint was filed, there was an ongoing violation of federal law. That's the straightforward inquiry that's required under ex parte Young, which is, at the time the complaint is filed, was there an ongoing violation of federal law? And did the complaint seek prospective relief? Both of those things are entirely true here. Under the verified complaint paragraphs 84 to 216, all of them allege ongoing violation of various constitutional provisions. And under the prayer for relief, which is the verified complaint at pages 45 to 46, everything that was requested was entirely prospective. It requested injunctive relief, declaratory relief, and a restraint. All of those under Dombrowski and many of this court's precedents are clearly prospective. That's the straightforward inquiry. All right. I have another question for you about your reply brief. In your reply brief, you say the Supreme Court and every court of appeals have found changes in COVID-19 orders do not result in mootness. The Supreme Court and every court of appeals, you say, says that at page six of your reply brief. Yes, ma'am. Could you clarify that? Because that's not accurate, is it? I believe it is accurate, Your Honor, because under… Have you read the cases cited in the 28J letter filed by the Commonwealth? At the time, Your Honor, there may have been some subsequent decisions that were released after the reply brief. Oh, so we're still going back to two years ago or whenever you filed the complaint? No, I don't think so. I think even as of this year, which was February, if you look at… And when the reply brief was filed, that was certainly true. All of the court of appeals that have released decisions on whether a change in a COVID-19 restriction was moot had said… No, no. There are at least three that are at odds with the statement you made in your reply brief. At the time the reply brief was filed, Your Honor, those… Okay, so now, now, let's talk about the here and now. Do you agree that the three cases cited in the… I mean, because you didn't reply to this letter, that the three cases cited in the Commonwealth's letter, that there are at least three circuit courts of appeal that have found mootness with changed circumstances based on COVID? That's fine if those three circuit courts ruled that way, but I'm telling Your Honor… That's fine if they did. That's fine if they did. Have you read them? I have read them, Your Honor, and I respectfully… So, they did. I would respectfully submit to you that they're incorrect under Tandon, under South Bay, and under… Incorrect maybe is a different thing, but they did rule that way. You may disagree with the way they ruled, but it is a fact that they ruled that way. Correct, and I respectfully submit that they did rule that. So, at the time you filed your reply brief, you weren't aware of these other cases, and that's why your reply brief is inaccurate, because it was before these cases. Is that right? Correct, and I would respectfully submit again that under the Supreme Court's decision, if a church, like Lighthouse Fellowship Church, remains under a threat that a new restriction could be reimposed at any moment, then it's not moot. And under the Supreme Court's precedent in the… Counsel, the cases that you're referencing there, were those cases that involved the application of Ex parte Young? Because I understand that to be your argument here. And I was thinking that the cases that you cited all dealt with different issues and were not Ex parte Young exception cases. Your Honor, as I have mentioned and as we pointed out in our reply brief, the ongoing violation and the mootness inquiries, they mirror each other. Well, okay, well let's, how about, wait a minute, let's answer my question, though, if you would. Are the cases that you cited there Ex parte Young cases? They did not involve the application of sovereign immunity, no, Your Honor, even though they all sued governors of the various states in California and New York and the other one, Nevada, I think. Right, but here we're dealing with an issue of an exception to 11th Amendment sovereign immunity, so while those cases that you cited might be informative, they're not really on point. Is that correct? I believe they are, Your Honor, because the analyses mirror each other, and as I have said at the beginning, under Verizon Maryland and under this court's DTM decision, the inquiry is rather straightforward. Was there an ongoing violation when the complaint was filed? That is absolutely true here. And did the complaint seek prospective relief against the governor? Those two things, under the verified complaint, prayer for relief at 45 or 46, and under paragraphs 82 through 216 of the verified complaint, unquestionably alleged an ongoing violation of various constitutional provisions, and unquestionably sought only prospective relief in the form of injunctions and declaratory. Those things were absolutely true at the time the complaint was filed. When the proper inquiry is in focus, the complaint survives an ex parte young challenge because it alleged an ongoing violation of federal law and sought prospective relief. That's the straightforward inquiry before this court. It was the straightforward inquiry before the district court. And application of those two factors shows that the governor is not immune from a challenge under ex parte young. And assuming that he is not, which I believe he is in our briefs, and as I have pointed out under Verizon Maryland and DTM suggests that he is not immune, even if that were the case, the complaint is not moved because the voluntary cessation doctrine does not move Lighthouse's challenge. Because the governor has not made it absolutely clear that he will never reinstate the challenge. As I pointed out just a minute ago, still to this day on the council, let me ask you if we can move on to another facet of the ex parte young argument before your time runs out. How would you distinguish this case from the Fifth Circuit's decision last year in Abbott? Well, for one, your honor, I would respectfully submit under this court's decisions in Alvarado versus Court of Trustees Montgomery County, that decision was vacated, so it's not precedent. Under this court's own precedent, you don't look to vacated decisions as having any precedential value. Abbott was vacated, so it doesn't have precedential value. And I would say under this court's decision in South Carolina Wildlife, the question as to the special relationship of a governor to his executive order is measured by whether he has proximity to and responsibility for an executive order. Because the governor is the only official in the Commonwealth who is authorized to issue executive orders, it cannot be gainsaid that he has proximity to and responsibility for. Indeed, no other official in the Commonwealth has proximity to or responsibility for an executive order because only he can issue. And under this court's South Carolina Wildlife decision, where it talks about how do you measure whether he has proximity to and responsibility for a challenged executive order, you look at whether he has supervisory authority over it, whether he was deeply involved in the decision, and whether he had responsibility for it. Under Virginia Constitution's Article 5, Section 7, only the governor can issue an executive order. Under Virginia Code 44-146.17, the governor is the one responsible for the entire Commonwealth's response to a declared emergency. He is the director of the emergency management. Every order that came out that dealt with COVID-19 and restrained Lighthouse from engaging in the free exercise of its religious beliefs was at the direct responsibility of the governor's executive order. Only he issued it. Only he can issue it. And there is zero question that a governor who is solely responsible for such an executive order has a proximity to and a responsibility for it. And so under this court's decision in South Carolina Wildlife, he certainly is subject to suit because he has the special relationship required for Ex parte Young and, as I have suggested, is not immune from suit under the 11th Amendment. I'll reserve the rest of my time. Thank you, Mr. Schmidt. We appreciate it. Ms. Kalin? Good morning, Your Honors, and may it please the Court, Michelle Kalin for Governor Northam. A little over a year ago, this court dismissed Lighthouse's appeal of the denial of preliminary injunctive relief as moot. This case remains moot. This case involves a challenge to long-expired COVID-19 executive orders that arose from a now-expired state of emergency in the Commonwealth. The two challenged executive orders involved COVID-19 mitigation measures that ended by their own terms 18 months ago. But Mr. Schmidt points out that there's an ongoing threat and that the governor could issue new orders at any time. What's your response to that? So I think an ongoing threat is not enough to keep a moot case alive. Here, the 10-person gathering cap on religious gatherings are not reasonably expected to occur, so the voluntary cessation exception to mootness is inapplicable. And why are they not reasonably expected to occur? So the situation currently is entirely different than what it was at the onset of the pandemic. When these mitigation measures were in effect, we did not fully understand the virus. They arose at a time where we were wiping down our groceries out of concern that the virus lived on surfaces, and we were sewing our own masks at home because of a shortage of PPE, and vaccines were only an aspiration. Today, we know a lot more about COVID-19, and our mitigation efforts reflect that. As this court pointed out when my friend on the other side was speaking, all of the mitigation efforts continually evolved towards allowing more and more flexibility, particularly with regard to worship. Well, is the December 14th, 2020 Executive Order 72 also support your argument? Because even though it's reinstated capacity limits on gatherings in light of increased COVID cases, it explicitly exempted religious services. That was in December 2020. So does that support your argument as well? Absolutely, Your Honor. Religious worship has not been subject to a gathering cap since July 1st, 2020. So for 15 months. And that's notwithstanding changes in the pandemic. As Helen pointed out in the reply brief, the Delta variant has taken place and has surged, and notwithstanding that, there has not been a gathering mitigation measure as applied to worship. And so I think the idea that it's reasonably likely to recur is just refuted by what's happened in the pandemic since. As to mootness, Your Honor, Appellant challenges executive orders issued at the very beginning of the COVID-19 pandemic. But there's no reason to conclude that that that appellant or any other anyone seeking to worship will be subject to these same issues. When Lighthouse originally appealed to the denial. But now he says we're supposed to just look at his complaint at the time it was filed. And I guess not focus on what has happened since. What's your response to that? My response to that is that mootness under Article 3 is not contingent only on a complaint. The case can be mooted over the course of litigation, as has been the case here. And I'll note that this court has already held that prior appeal, the denial of the TRO motion, that that appeal was moot and the parties briefed mootness. And after briefing of mootness, this court has already concluded that that the case is moot. And the only relevant thing that has changed since this court found appellants prior appeal moot is that more time has passed and appellants still have not been subject to any 10 person gathering cap. So the case was moot now and the case remains moot today. Well, you would have had a different standard for the temporary restraining order as opposed to the injunction he asked for in the complaint, wouldn't you? I don't think it is on mootness, Your Honor. It would be likelihood of success on the merits. But if this court evaluating mootness concludes that the denial of the TRO is proper because of mootness, the same analysis would apply here, Your Honor. So are you saying that's the law of the case? I think technically, because it was the court held that this that the holding of this court was, I think it's quote, this appeal is moot. So the court did not specifically hold the entire case is moot. You didn't you didn't make the argument on law of the case in your brief. That's correct, Your Honor. I think I think given I think the principled analysis as to why that appeal was moot, likewise applies as to why the case as a whole is moot. But this court's holding was with regard to the appeal that was pending then. And now the question is whether the entirety of the case is moot. I think, Your Honor, so even if appellant's claims were not moot, they're still barred by sovereign immunity. Appellant is not entitled to the limited exception to sovereign immunity set forth in Ex parte Young. That exception only applies to injunctive relief as to an ongoing violation of federal law by an official with a special relationship to the policy. And when that official has acted or threatened to act to enforce the policy, the Ex parte Young fiction is simply not present here for at least three reasons. First, even if appellant was correct on the merits on its First Amendment theory, there is no ongoing violation here. Mootness is not the equivalent of the Ex parte Young ongoing violation requirement because the two concepts are not the same. Just three years ago, this very court specifically cautioned litigants against conflating the Ex parte Young exception with the doctrine of mootness. And that's Alan B. Cooper at page 355. This court noted that because the ongoing infringement that plaintiffs allege has ended, they cannot employ Ex parte Young, the Ex parte Young exception to address any fear of future infringements. And that reasoning squarely applies here. The ongoing violation articulated by my friend on the other side, this alleged constant threat, there simply is no constant threat here because the executive orders themselves have expired. And the very state of emergency pursuant to which those executive orders, that state of emergency has expired as well. So there is no constant threat here. But the second reason the Ex parte Young exception does not apply is that Virginia's governor, the one and only defendant named in this case, is not the proper defendant for the Ex parte Young exception. Looking to the same... Who do you think they should have sued? You're saying your client's not the right defendant. Tell us who they should have sued. So they should sue the entity that enforces. And so in this case, I think the complaint itself shows that the entity that enforced the executive orders as the appellant were local officials. And so under Virginia law, for example, the Commonwealth's attorneys are the ones who bring... It's not the governor who enforces the executive orders. I think the analysis in Ray Abbott as to that point is relevant, as is this... You're saying they should have sued all the Commonwealth's attorneys? Well, I'm not inclined to drop their complaint for them, Your Honor, but... There are 100 of them, right? How many counties you got? Well, I think it would be difficult for an appellant to show that they have a reasonable basis to be concerned that a Commonwealth's attorney on the other side of the state is going to enforce an executive order as to them. But I think the relevant question for the Ex parte Young exception is who enforces the order. And it's clear on the face of these executive orders that it's simply not the governor here. But even if this court disagrees with that... But the governor issued executive orders, and you say they can't sue him. They got to sue the Commonwealth's attorney and a bunch of other people or entities. I don't understand that. It looks to me like if they want to get an injunction, get some kind of relief against these executive orders, it doesn't make some kind of sense to do what they did. I think the analysis is more circumscribed than that, Your Honor, as this court articulated in Gilmore. And I recognize Your Honor's dissent in Gilmore that the view of the special relationship is broader than the approach that the court took in Gilmore. But this court reaffirmed that in Allen v. Cooper that the emphasis is on enforcement and who enforces. And the face of these executive orders is not that the governor enforces because it's criminal consequences, and it's not the governor in Virginia who brings criminal charges. But even if this court disagrees with that, there's yet a third reason why the Ex parte Young exception to sovereign immunity does not apply here. And that's because Governor Northam never acted or threatened to act to enforce the policy as to appellant. In fact, to the contrary, Virginia State Police asked local officials, the officials enforcing the executive orders, to seek alternatives before seeking criminal consequences. And it was the local officials. They tried to sue the Commonwealth's attorneys. They, of course, would have said they had prosecutorial immunity, absolute immunity. Potentially, Your Honor, but that's a separate question from the Ex parte Young exception to sovereign immunity. That's a different immunity. And so I think there is a general proposition. You can't sue a prosecutor. That doesn't work. It's like trying to sue the judge. I suspect, Your Honor, we're going to get we will receive some guidance on the question of who proper defendants are in certain cases when the Supreme Court hears oral argument and eventually decides the pending decision with regard to Texas's SB8. But in terms of Ex parte Young, which is the question at issue here, the Ex parte Young analysis with regard to the one and only defendant in this case, Governor Northam, fails for three independent reasons. It fails because Governor Northam is not the proper defendant and does not enforce the orders. It fails for the second reason because Governor Northam has not actually enforced or threatened to enforce the order. Well, couldn't you have, as I thought about Judge King's question, couldn't the defendant, which would be Lighthouse in this case, have raised the Ex parte Young as an affirmative defense in the prosecution, even if it wasn't used as a method to seek an injunction? That the Convos attorney was without authority to prosecute because of the Ex parte Young exception to sovereign immunity? I mean, isn't that what they do when you have agency heads and that sort of folks who are subject to these suits? That's correct, Your Honor. When the question is whether sovereign immunity applies because the lawsuit, even if it means an individual executive branch official, is in fact truly a suit against the state. Here, there's a separate question. The Commonwealth's attorneys are independently elected executive officers, and so the analysis as to whether they're entitled to sovereign immunity and whether the suit against them is truly a suit against the state is slightly different than it is with regard to naming, for example, the governor here. Finally, Your Honors, with regard to my friend on the other side's arguments on Pennhurst in the reply brief, I'll just note that Pennhurst completely bars appellants' request that this court issue an injunction as to Virginia's governor following Virginia law. An appellant's purported plans to ask the United States Supreme Court to overturn Pennhurst are no basis for relief in this appeal. This court has already concluded that an appeal of a TRO denial was moot, and for those same reasons, the case remains moot today. We therefore ask that the court affirm. Thank you. Thank you very much. Mr. Schmidt? Thank you, Judge King. Just a few points on rebuttal. I want to go to your question, Judge King, about, well, who is the proper authority here? You correctly point out that only the governor can issue these executive orders. We saw in Judge King's... Well, I don't profess to know. Let me tell you this. I don't profess to know. I'm just asking the question. I understand, Your Honor. But the point you make is valid, though, and proves the special relationship requirement that's at issue under Verizon Maryland and under this court's decision in South Carolina, Wyoming. Even if you assume for the sake of argument that the Commonwealth attorney may be the proper party to sue, for one, you can't sue him because he's immune. But two, the problem with that entire mode of analysis is we saw an injunctive relief against executive orders. If we go into federal district court and ask for an injunctive relief against a Commonwealth attorney who has no authority to issue an executive order, no authority to amend it, no authority whatsoever as it relates to the executive order, the relief is ineffectual. It proves the point that the governor is the only government official who has any authority or responsibility to or connection with the executive orders at issue in this channel. So any injunction would necessarily require an injunction against the only official tasked with or given authority to issue such an executive order. So it proves the special relationship because he has a proximity to and responsibility for, and only relief against him would provide appellants with any relief whatsoever. Two, I'd like to point out too, the government points out that this court's decision on the preliminary injunction was moved. Well, the fact that a preliminary injunction appeal may become moved does not otherwise move the other claims that appellant brought here. The complaint certainly alleged, and as applied challenge, and as we pointed out in our briefs, the governor's executive orders were applied to the pastor of White House Fellowship Church. As applied challenges necessarily look backwards under this court's decision in, I believe it was, it's Green versus City of Riley. Even changes to a challenge ordinance or changes to an executive order, they don't render moved, and as applied challenges, because they necessarily look backwards. The fact that it has been applied is what you look at, and then as applied challenges. So as a practical matter, it can't be prospective in general because it is, it looks backwards as to how the previous executive order was enforced. And for a final point on the mootness analysis, I would point this court to our reply brief and in our opening brief that under already benighted in Trinity Lutheran versus Comer. The government bears a heavy burden to make it absolutely certain that the challenge conduct won't recur. And as I pointed out on the governor's website, even this morning, it still said that he's weighing all options, that he will, he reserves the right to impose more restrictions if necessary, and he might issue new orders if he deems it necessary. And under those, I would submit to the court that under the governor's own statements that are in existence right now, on the website right now, his own public statements suggest that it is not absolutely certain that he would never reimpose the challenge prescription. And because of that, I would submit to your honor that he is subject to suit under ex parte young because he has a special relationship to a proximity to and a responsibility for the executive orders challenged in this appeal. And also that it is not moved because he retains the authority to reinstate them at any time, has stated publicly even today that there are, that he reserves the right and may impose them again at any point. And under the Supreme Court's decisions in Tandon and Catholic Diocese and South Bay and Harborside, that suggests that appellants remain under a constant threat that the challenge restrictions will be reinforced, and that does not move the challenge. And for all those reasons, I submit that the district court should be reversed, and I thank your honor for the time. Thank you, Mr. Schmidt. We appreciate it. And we'll take this. We appreciate Taylor's argument. We'll take this case under advisement, Madam Clerk. And if my colleagues have no objection, we'll take about a five minute break. Great. Thank you. The court will take a brief recess.
judges: Robert B. King, G. Steven Agee, Stephanie D. Thacker